June 20, 1978

## 78-34 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF AGRICULTURE

### Advisory Committees—Federal Meat Inspection Act (21 U.S.C. § 661(a)(4))—Poultry Products Inspection Act (21 U.S.C. § 454(a)(4))

This responds to your Department's request for our opinion regarding the role and composition of certain advisory committees provided for under the Federal Meat Inspection Act and Poultry Products Inspection Act. Two issues are presented: (1) whether the Secretary of Agriculture must appoint and consult with advisory committees prior to undertaking certain kinds of actions under the Acts; and (2) whether committee membership must be limited to members of State agencies as expressly provided in the Acts, or whether the Federal Advisory Committee Act would permit a more broadly representative membership. We conclude that, despite the language of discretion used in connection with the appointment of advisory committees under the two Acts, where specific reference is made in mandatory terms to consultation by the Secretary with such committees, creation and subsequent consultation is a necessary predicate to the specified action by the Secretary. We also conclude that so long as State agencies are adequately represented, membership may be broadened in keeping with the Federal Advisory Committee Act to insure balanced representation of pertinent interest in light of the functions of the committees. We do not, however, believe that Title XVIII of the Food and Agriculture Act of 1977 is applicable.

### I. Need for Advisory Committees

Section 301(a)(4) of the Federal Meat Inspection Act (FMIA) (81 Stat. 597, 21 U.S.C. § 661(a)(4)), enacted in 1967, reads as follows:

> (4) The Secretary [of Agriculture] may appoint advisory committees consisting of such representatives of appropriate State agencies as the Secretary and the State agencies may designate to consult with him concerning State and Federal programs with respect to meat inspection and other matters within the scope of this Act, including

evaluating State programs for purposes of this Act and obtaining better coordination and more uniformity among the State programs and between the Federal and State programs and adequate protection of consumers.

Its counterpart, § 5(a)(4) of the Poultry Products Inspection Act (PPIA) (82 Stat. 797, 21 U.S.C. § 454(a)(4)), enacted the following year, contains identical language with respect to poultry product inspection programs. Various provisions of the two Acts are, however, formulated in language which on its face appears to require the Secretary to consult with an appropriate advisory committee concerning the following matters: prescription of labeling and definitional standards relating to covered articles,[1] issuance of regulations concerning handling of meat and meat products by retail establishments with minimal involvement in interstate commerce[2] imposition of inspection, recordkeeping, and registration requirements and regulations on persons not engaged in commerce concerning transportation and importation of dead, dying, disabled, or diseased animals,[3] provision of advice, technical and financial assistance to State programs,[4] and Federal action to prevent production of adulterated meat or poultry for distribution within a State.[5] Two interpretations of this mixture of discretionary and mandatory language are nevertheless possible: (1) creation of and consultation with such a committee is a condition precedent to undertaking actions by the Secretary of the sort specified; or (2) consultation is required only where a committee has, in the Secretary's discretion, been created. While the former view derives support from the Acts' structure and legislative history, no comparable case can be made for the latter.

At the outset, no practical explanation is apparent to support the latter interpretation, which assumes that Congress intended the mandatory use of an optional committee only if the committee has been created. Indeed, it seems clear that no important policy objective would be served on a uniform basis by such a haphazard approach, if the latter interpretation is adopted. It is, moreover, noteworthy that a rational pattern may be discerned from the scattered references to mandatory use of advisory committees; Congress apparently intended to insure proper inspection of meat and poultry where interstate commerce was implicated, but also endeavored to limit Federal intrusion where the States themselves had matters under control. To the extent that it does not impede necessary Federal action, such mandatory use of advisory committees is in keeping with this goal.

The legislative history supports this view. For the most part the committee reports simply track the language of the statutes as enacted. *See* H. Rept. No. 653, 90th Cong., 1st sess. 7, 17, 26 (1967); S. Rept. No.799, 90th Cong., 1st sess. 16, 17 (1967) (FMIA); H. Rept. No. 1333, 90th Cong., 2d sess. 18, 22,

---

[1]*See* FMIA § 7(c), 21 U.S.C. § 607(c); PPIA § 8(b), 21 U.S.C. § 457(b).

[2]*See* FMIA § 24, 21 U.S.C. § 624; (no PPIA counterpart).

[3]*See* FMIA § 205, 21 U.S.C. § 645; PPIA § 11(e), 21 U.S.C. § 460(e).

[4]*See* FMIA § 301(a)(3), 21 U.S.C. § 661(a)(3); PPIA § 5(a)(3), 21 U.S.C. § 454(a)(3).

[5]*See* FMIA § 301(c)(1), 21 U.S.C. § 661(c)(1); PPIA § 5(c)(1), 21 U.S.C. § 454(c)(1).

25 (1968); S. Rept. No. 1449, 90th Cong., 2d sess. 15 (1968) (PPIA). At some points, however, they are more revealing. Thus, referring to § 11(e) of the Poultry Products Inspection Act, the House committee stated:

> The inclusion of interstate operations within these surveillance programs is possible when it is determined that the State does not have and does not exercise authority at least equal to that of the Federal Government over records, registrations, and distribution of '4-D' poultry, its parts or carcasses. This action could be taken only after consultation with appropriate State authorities.

A similar concern that the Federal Government do what was necessary without preempting the jurisdiction of the States over interstate commerce is apparent in the House committee report on the Federal Meat Inspection Act. *See* H. Rept. No. 653, *supra*, at 5. Based on this evidence, we believe that the provisions of the two Acts should be read literally so as to require consultation with State advisory committees before the Secretary undertakes the specified actions.

## II. Composition of Advisory Committees

As the previously quoted language of § 301(a)(4) of the Federal Meat Inspection Act and its counterpart, § 5(a)(4) of the Poultry Products Inspection Act, reveals, advisory committees are to be composed of "such representatives of appropriate State agencies as the Secretary and the State agencies may designate." While this language on its face appears to contemplate committees comprised of official State representatives, it should also be noted that the statute is rather general in its terms and does not specify the number of committee members or reveal any special concern for the manner of their selection so long as the States' interests are represented.

It is our view that this statutory mandate may be observed while at the same time complying with the spirit of the Federal Advisory Committee Act. It should first be noted that the Act's rather fragmented structure provides grounds for some doubt as to whether, on its face, it is to apply in the rather unusual circumstances here presented. Section 5(c), 5 U.S.C. App. I § 5(c) (1976), provides that the guidelines regarding balanced membership contained in subsection (b) of that section are to be followed, to the extent they are applicable, by the President, agency heads, and other Federal officials in "creating" advisory committees. Since, as we have previously concluded, the advisory committees here in question must be available for mandatory consultation by the Secretary, they have, in effect, a duration provided by law, and should not have been subject to the termination provisions of § 14(a)(2)(B) of the Act. Thus, the Secretary will, in effect, need to reconstitute, rather than "create," the committees, and § 5(c) of the Federal Advisory Committee Act, on its face, would not appear to control.

Nevertheless, the intent of Congress in enacting the Advisory Committee Act leads us to believe that allowing for more broad-based membership while retaining adequate representation of State agencies would be appropriate. Section 4(a) of the Act provides: "The provisions of this Act. . . shall apply to

each advisory committee except to the extent that any Act of Congress establishing any such advisory committee specifically provides otherwise.'' Coupled with this intent that the Act be given a broad and uniform application is Congress' repeatedly stated concern that committees henceforth are to provide balanced representation. *See* H. Rept. No. 1017, 92d Cong., 2d sess. 6, 10, 15 (1972); S. Rept. No. 1098, 92d Cong., 2d sess. 5 (1972).

The spirit of the Advisory Committee Act and its requirement of balanced membership ''in terms of the points of view represented and the functions to be performed by the advisory committee,'' 5 U.S.C. App. I § 5(b)(2), in no way conflict with the provisions of the FMIA and PPIA with regard to committee composition and function. Therefore, in our judgment, when the committees are reconstituted, more broadly representative members might properly be included in addition to representatives of State agencies.

There is the further question whether advisory committees under the FMIA and PPIA would be subject to Title XVIII of the Food and Agriculture Act of 1977, 7 U.S.C. § 2281 *et seq.* Since the definition of ''advisory committee'' for purposes of title XVIII excludes committees ''established by statute'' and since nothing in that Act's legislative history suggests a contrary reading *(see* S. Rept. No. 180, 95th Cong., 1st sess. 182 (1977); H. Rept. No. 599, 95th Cong., 1st sess. 247 (1977)), we conclude that the provisions of § 1805(c), 7 U.S.C. § 2285(c), relating to membership balance on Department of Agriculture ''advisory committees,'' do not apply.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

138